NEWBURGER & BROTHER *v.* HOYT.

1. Where, under a contract of sale or return, cigars were bought upon four months time, the buyers having until the end of that time to ascertain whether the goods gave satisfaction and whether a trade in them could be built up, and the right to return at the end of that time, at the expense of the sellers, such as were left on hand in the event they did not give satisfaction and a trade in them could not be built up, the buyers had the full four months to ascertain whether they gave satisfaction, and a reasonable time thereafter in which to return them if at the expiration of the four months they were not satisfied with them, and were not compelled to return them on the day the four months expired.

2. Where, at the expiration of the four months, a dispute arose between the buyers and the sellers concerning the contract, the latter contending that the sale was an absolute one and that their agents had no authority to make with the buyers the contract of sale or return, and correspondence and negotiations ensued between the parties and counsel, with a view to a settlement of the claim, the buyers having tendered the remaining cigars to the counsel of the sellers and offered to pay for those sold, a lapse of five weeks between the expiration of the four months and the time of the loss of the cigars by a flood, was not so unreasonable as to throw the loss on the buyers.

January 14, 1891. By two Justices.

Contracts. Sales. Rescission. Vendor and purchaser. Before Judge MADDOX. Floyd superior court. March term, 1890.

Newburger & Brother, of Cincinnati, O., sued Hoyt as surviving partner of Hoyt & Company, of Rome, Ga., upon an account for $155 for 5,000 cigars, besides interest. The defendant pleaded not indebted. Also, in brief, that the cigars were sold on the express agreement that if they did not give satisfaction, so that defendant could build up a trade in them, he might return

what should be left unsold at the expiration of four months and get credit therefor at the price at which they were bought; that they did not give satisfaction to customers, and in consequence defendant could not build up a trade in them, and on February 21, 1886, the expiration of the four months, he notified plaintiffs that the 4,000 cigars remaining unsold were subject to plaintiffs' order; that they neglected to give any order for their disposition, but allowed them to remain in defendant's custody, who took all reasonable and proper care of them, but about the first of April thereafter, while they were in defendant's storehouse in Rome, they were ruined by an unprecedented flood which then visited that city; and that he offered to pay plaintiffs for the cigars sold, at the expiration of the four months, but they refused to accept the same; and he now tenders and pays into court the amount due therefor, with interest to date, to wit, $35.65.

The evidence for the plaintiffs tended to show the following: The goods were sold in the regular course of business, in the ordinary way, the sale being an absolute one on four months time. There was no agreement whatever as to the return of the unsold balance when the bill for the purchase should become due on February 21, 1886. No tender of any kind, either before or after the bill became due, was made by defendant; he did not make any tender or offer of settlement by proposing to return the unsold goods and paying for those sold, nor has he ever tendered to plaintiffs the unsold goods. They never received any communication to that effect; the only communication they received in regard to the transaction was a printed circular dated January 7, 1886, signed by W. D. Hoyt, informing them, as creditors of W. D. Hoyt & Company, of the sudden death of R. T. Hoyt, the business manager of the house, and stating that this event might prevent

the paper of the house being met as promptly as W. D. Hoyt would like, but he desired to assure plaintiffs that the assets of the house far exceeded its liabilities, that plaintiffs' account would be paid in full, and that he hoped to be able to make arrangements by which all liabilities would soon be paid. No letter was received by plaintiffs from defendant under date of February 19, 1886, and no letter whatever on the subject of tender or return of goods, etc. The plaintiffs' traveling agent who sold the cigars had no authority to make any promises in regard to the privilege of returning any unsold goods; his sole duty was to sell goods direct, without any conditions or restrictions. The account is just, correct, past due and unpaid. On January 20, 1886, plaintiffs sent the claim to Reece & Denny, attorneys at Rome, not for collection, but to protect plaintiffs' interest should they be jeopardized before the account fell due; this was on account of plaintiffs having received the circular letter of January 7, 1886. On March 2, 1886, in pursuance of advice from plaintiffs that they had drawn on defendant and that the draft had not been paid, Reece called upon W. D. Hoyt; and on March 17, 1886, Denny also called upon him, and what transpired between them is hereafter stated. Reece & Denny wrote to plaintiffs with regard to the return of the unsold goods, and plaintiffs denied the contract and said they had never received any letter from defendant with regard to the transaction. Denny thought the matter would have been settled if the cigars had not been destroyed by the freshet, as Reece & Denny were trying to get the consent of plaintiffs to settle according to Hoyt's claim, as an accommodation to Hoyt and at his request, although plaintiffs denied the contract and were unwilling to accept any return. As a result of this effort of Reece & Denny, Hoyt received from plaintiffs the letter hereafter mentioned, after the goods

were destroyed.   It would take about twenty-four hours for a letter to go from Rome to Cincinnati.

The testimony for the defendant tended to show the following: Rutherford, traveling salesman of plaintiffs, sold Hoyt the cigars, under a contract made on October 15, 1885, at Hoyt's store, and written on an account-book of Hoyt & Company, stipulating that the cigars were bought at four months time, on condition that if they did not give satisfaction so that Hoyt & Company could build up a trade in them, what was left might be returned at the expense of plaintiffs.   Hoyt & Company endeavored to sell the cigars, but they did not give satisfaction and not many were sold.   About February 19, 1889, plaintiffs drew on Hoyt & Company for the price of the cigars; and a letter written by Hoyt's direction to plaintiffs (a copy of which was introduced in evidence) stated that the draft had been presented for payment; that the terms under which the cigars were bought were, that if they did not sell and a demand was not created for them, they could be returned at plaintiffs' expense; that Hoyt & Company had sold but few of them, though they had tried to push them; and that they would count what cigars they had on hand and remit for what they had sold. The reason Hoyt did not then ship the cigars back as stipulated in the contract was, that he thought it proper and fair to give plaintiffs an opportunity to direct as to their shipment, or to order what to do with them.   Frequently in such cases the jobber may have dealings with other parties in Rome or its vicinity, and can dispose of the goods without the expense of shipping them back.   It is the custom among merchants to ask such direction when returning goods.   A short time after the letter of February 19th was written, and about the time to get a reply to it, Reece called on Hoyt with the account for collection.   Hoyt showed him the contract

under which he had bought the cigars, and told him they had not given satisfaction and Hoyt & Company were ready to return those not sold and would pay for those sold. They had sold about one thousand and had packed the other four thousand in a box to themselves. Reece said he had not heard of this contract, would inform his clients of it and see what they might say about it. Some days after, Denny called about the same matter, was shown the contract and took a copy of it, and Hoyt told him that Hoyt & Company were ready to return the cigars. They had the cigars counted in Denny's presence and offered to turn them over to him, but he said he had no authority to take them and would confer with his clients about the matter. The cigars remained in Hoyt's store until destroyed, the last of March, 1886, by an extraordinary freshet which flooded the stores in that portion of the city and ruined the goods. Hoyt took the same care of these cigars as he did of his own goods, and such as was ample against any high water ever before known in Rome. A few days after the flood he received from plaintiffs a letter directing the cigars to be shipped back to them. This letter was not in response to any from Hoyt. The only effort he had made to return the goods previous to Denny's call was the letter of February 19th, written by his book-keeper, who testified that he could not say he recollected the mailing of this particular letter, but his invariable custom was to mail in the evening all business letters he had written during the day, and, as the letter-book showed the date of this letter to be February 19th, he knew that he mailed it with his other letters of the same date that evening. No answer to this letter was received, though answers were received from other letters written on the same day. Some of the cigars, remnant of a box or two, were sold after this letter was written and after Reece and Denny called.

When the contract as to the cigars was made, Ruther-
ford recommended them very highly and said Hoyt &
Company would have no trouble in introducing and
selling them. Hoyt & Company exposed them in their
show-case and made all efforts to sell them, but they
did not give satisfaction, and a purchaser would never
buy them a second time. If they had been as repre-
sented, Hoyt & Company ought to have sold all of them
in the four months, considering the extent of their
trade in cigars. Two retail cigar-dealers testified that
cigars are frequently sold with satisfaction guaranteed
or goods returned, and if they do not prove satisfactory
it is the custom of the trade to communicate with the
jobber as to what disposition to make of them, before
exercising the option to return them. This the wit-
nesses themselves frequently did. Their testimony as
to the custom refers generally to the matter and where
there is no written contract; but when a written con-
tract is entered into, custom has nothing to do with it;
and if, under the contract, goods are to be returned at
a specified time if not satisfactory, the letter of the con-
tract is strictly complied with by these witnesses.

The jury found $35.65 for the plaintiffs, who moved
for a new trial. which was denied, and they excepted.

REECE & DENNY, for plaintiffs.

C. N. FEATHERSTON, for defendants.

SIMMONS, Justice.

The facts will be found in the official report. The
contract set out therein was one known as a contract of
sale or return. In this class of contracts the property
and goods vest immediately in the buyer, with an option
to return or resell to the original vendor such as may
remain on hand at a stated time. It amounts to noth-
ing more than a mere privilege to rescind the sale.
Until the option to return is exercised, title remains in
the buyer. If no particular time is fixed for the return,

v 86-33

then a reasonable time in which to do so is allowed; but if a particular time is fixed, the return must be made within that time, and the question of reasonable time does not enter. Benj. Sales, Bennet's notes, p. 560; 3 Am. & Eng. Enc. L. 433. Under this contract, Hoyt & Co. bought the cigars upon four months time, and had until the end of that time to ascertain whether they gave satisfaction and whether they could build up a trade in them; and what was left on hand at the end of four months they had the right to return at the expense of Newburger & Co. in the event they did not give satisfaction and they could not build up a trade in the cigars. They had the full four months time to ascertain this. And if at the expiration of the four months they were not satisfied with the cigars, they had a reasonable time thereafter in which to return them, and were not compelled, in our opinion, to return them on the day the four months expired.

But it was contended by counsel for the plaintiffs in error that if they were not compelled to return them at the expiration of the four months, and were to be allowed a reasonable time thereafter, the time from the expiration of the four months until the cigars were lost by the flood was an unreasonable time, and therefore Hoyt & Co. were liable for the loss. This perhaps would be true were it not for the special facts in this case. The record shows that about the time of the expiration of the four months, a dispute arose between Hoyt & Co. and Newburger & Co. concerning the contract, Newburger & Co. contending that it was a straight out sale to Hoyt & Co., and that their agent had no authority to make with Hoyt & Co. the contract of sale or return evidenced by the writing in this case. The record shows that correspondence and negotiations were going on between the parties and counsel with a view to a settlement of the claim, Hoyt & Co. having tendered the

cigars to the counsel of Newburger & Co. and offered to pay for what cigars they had sold. Under these facts, we agree with the court and jury below that the time between the expiration of the four months and the loss of the cigars was not so unreasouable as to throw the loss upon Hoyt & Co.     · *Judgment affirmed.*